Sweeney, Constance M., J.
The defendant Michael Sullivan, Nicole Proulx and the City of Holyoke move to disqualify plaintiffs counsel on the grounds that he has allegedly violated several disciplinary rules and has conflicts of interest due to his past representation of some parties and potential witnesses.[1] For the reasons stated herein, the moving parties’ motion is DENIED and the moving parties and their attorney, Lisa Brodeur-McGan, are ordered to pay costs, including attorney fees, incurred by the plaintiff in defending against the knowingly wrongful allegations made by the defendants and their attorney in this motion.
This action for wrongful termination of employment and defamation arises from events which occurred during the time the plaintiff was the City’s license clerk. The plaintiff says he was discharged from his employment because the defendants wrongfully accused him of misappropriating funds and essentially accepting bribes from license applicants and licensees.
The litigation in this case is marked by contentiousness between the parties and their attorneys. It has reached a new and dangerous level with this motion to disqualify plaintiffs counsel. Attorney Brodeur-McGan and her clients are attempting through this motion to thwart their discovery obligations and, even more seriously, to interfere with the right of the plaintiff to be represented by an attorney of his choosing. The moving parties and their attorney do not hesitate to attempt to destroy the reputation of plaintiff s counsel through direct accusations and innuendos of wrongdoing that are unfounded. Some context is helpful here.
Throughout the course of this litigation the parties’ attorneys have had difficulty distinguishing their professional responsibilities from their personal animosity toward some or all of opposing counsel. This is best evidenced by a series of motions filed during the last several months. Most of the aggravating factors giving rise to the court’s rulings on these motions have been due to Attorney Brodeur-McGan’s conduct. For example, Attorney Brodeur-McGan scheduled two depositions to take place at the same time in different counties. When plaintiffs counsel sought relief from this obvious and deliberate scheduling conflict, Ms. Brodeur-McGan countered that the plaintiffs counsel was raising a frivolous objection because he should have known that the deponents would elect to mail in their documents rather than appear in accordance with the summonses. As an example of Ms. Brodeur-McGan’s hubris, she is seeking sanctions against plaintiffs counsel for successfully obtaining a protective from the Court to prevent her from requiring plaintiffs counsel to be in two places, fifty miles apart, at the same time. Yet at other times, Attorney McGan contacted the Clerk’s office to announce that she was on her way to Court to obtain unspecified relief from supposed wrongdoing by plaintiffs counsel during some depositions. Nothing materialized from these seemingly frantic calls, probably because I instructed the Clerk’s office not to respond to these general alarms from Attorney Brodeur-McGan unless she presented some written request for court intervention.
I entered a scheduling order agreed to by the parties that set April 30, 2009 as the discovery completion date. The plaintiff scheduled the defendant Sullivan’s deposition for March 26, 2009. This was the fourth time the deposition was scheduled. The earlier depositions were cancelled at the defendants’ request. Sullivan is the Mayor of Holyoke. Attorney Brodeur-McGan notified plaintiffs counsel less than 48 hours before the scheduled deposition that she would not produce her client for his deposition and that she would not attend any further depositions because she had just realized that plaintiffs counsel was ethically conflicted. In particular, she claimed that plaintiffs counsel represented the City of Holyoke and Sullivan from 2001-2002 with respect to licensing issues. Moreover, she suddenly realized “after putting the puzzle together” that after a brief tenure with the City, plaintiffs counsel represented the license holders of the Latin Spot, a Holyoke bar. The Latin Spot owners, according to Brodeur-McGan, are essential witnesses in the case and their testimony is likely to involve matters that occurred when plaintiffs counsel represented them. Indeed she claims that she suddenly realized that she might have to call plaintiffs counsel as a witness.
*511 Attorney Brodeur-McGan did not raise any of these claimed conflicts until just before discoveiy closed and literally on the eve of her client’s deposition. She cannot cogently explain how, if these conflicts actually existed, she remained silent about them for more than four years after this case was entered in Court. It is almost embarrassing to hear her explanation. She weaves a diz2ying tale consisting of unrelated facts, distortions, innuendo and unsupported suppositions to arrive at the penultimate moment when she, in her own oft repeated words, solved the puzzle. It is interesting to note that while she claims the plaintiffs counsel cannot take any affirmative action on behalf of his client due to the alleged conflicts of interest, she has no problem expecting him to respond to her as she attempts to continue discoveiy for her clients; this, despite the passage of the discovery deadline. It is clear that Attorney Brodeur-McGan and Mayor Sullivan were attempting to avoid Sullivan’s scheduled deposition and hid behind claims of conflicts of interest and threats of filing complaints with the Board of Bar Overseers in order to avoid providing proper discoveiy in this case.
In their motion, the movants assert that plaintiffs counsel violated the Massachusetts Rules of Professional Conduct in several ways. Specifically, the defendants say that plaintiffs counsel violated the following rules for the following reasons:
1. Rule 1.6(a)(b) by disclosing to the plaintiff secrets and confidences obtained during counsel’s representation of Sullivan and the City and his later representation of the Latin Spot.
2. Rule 1.7 by simultaneously representing the plaintiff and the Latin Spot during this litigation.
3. Rule 1.9 by representing the plaintiff in this matter having represented the Latin Spot in a substantially related matter.
4. Rule 3.4 by obstructing or destroying evidence.
5. Rule 3.7 by representing a party while likely being a necessary witness at trial.
The claimed rules violations fall into three categories: 1. destruction of evidence, 2. prior legal representation of the defendants Sullivan and Holyoke, 3. prior legal representation of the Latin Spot. Standing alone, any one of these claims if true is of great seriousness. The most serious of which is the allegation that plaintiffs counsel destroyed or obstructed evidence in this case. There is absolutely no evidence whatsoever that plaintiffs counsel obstructed or destroyed anything to do with this case, let alone evidence. It cannot be emphasized enough that Attorney Brodeur-McGan has not presented an iota of evidence in support of her claim. While Attorney Brodeur-McGan made sweeping allegations of evidence destruction in her filings, she abandoned any attempt to justify that claim by the time of hearing. She abandoned it because her claim is groundless. However, she didn’t even have the good grace at hearing to withdraw that particular claim but instead left it to plaintiffs counsel to refute that which she had not supported in any way. This false claim of Attorney Brodeur-McGan, standing alone, constitutes a direct and profound violation of M.R.Civ.Pr. Rule 11.
The next category of claimed ethical violations relates to the plaintiffs attorney representing the city of Holyoke and Mayor Sullivan at an earlier time. Immediately following his admission to the bar, plaintiffs counsel was employed by the City of Holyoke as an attorney in its Law Department. He worked there from Januaiy 18, 2000 through August 31, 2001. He was the most junior of attorneys in the office. Mayor Sullivan now supposedly remembers that he discussed his concerns about possible irregularities in the plaintiffs work with the City Solicitor and Attorney Allyn. Additionally he states in his affidavit that Mr. Allyn was assigned to licensing matters. In contrast, Attorney Allyn’s affidavit is veiy specific and highly detailed in describing his duties and obligations as a member of the Law Department. It is fully corroborated by the affidavit of a longtime employee of the Law Department. Attorney Allyn was assigned to provide legal support for housing code enforcement. He did not represent the City or its mayor with respect to licensing issues
Mayor Sullivan’s contentions ring hollow. His affidavit consists mostly of generalizations and is virtually devoid of supporting detail. He does not explain why he waited almost 5 years from the time litigation began in this case to raise this claimed conflict. Nor does he explain the convenient timing of his memory. He supposedly recalled the supposed alleged conflict less than 48 hours before his deposition was to begin. He also has a personal reason for disparaging Attorney Allyn. According to Attorney Allyn, he left the law department because the Mayor asked him to engage in unprofessional conduct. The Mayor has not refuted that assertion. Finally, it is of note that the Mayor and the City Solicitor secured a conflict of interest waiver for Attorney Allyn from the State Ethics Commission, allowing him to represent clients who had previously done business with the City during the time when Attorney Allyn worked for the City.
The final categoiy of ethical violations concerned Attorney Allyn’s representation of the owners of the Latin Spot. Attorney Brodeur-McGan essentially says that the plaintiff either represented the Latin Spot when it was applying for a license with the city of Holyoke while the plaintiff was the licensing clerk or that the plaintiff extorted money from the Latin Spot in exchange for arranging for a license. The defendants claim that the owners and representatives of the Latin Spot are necessary witnesses at trial to establish the plaintiffs wrongdoing in the performance of his duties. They further say that Attorney Allyn represented the Latin Spot during relevant times and that he is thus conflicted because he has privileged information from *512 the Latin Spot that directly bears on the plaintiffs alleged wrongdoing. Once again, the moving parties make a false claim regarding Attorney Allyn. He did not represent the Latin Spot with respect to any matter bearing on this case. After leaving the Law Department, Attorney Allyn entered private practice and was eventually retained by the Latin Spot to represent them with respect to health code and building code violations. He never represented them on any matter relating to license transfer, corporate formation, or stock transfer. They were represented by another attorney from a different firm on such matters. In fact, the city of Holyoke and the Mayor are well aware of this. In February 2005, the City of Holyoke attempted to notify the owners of the Latin Spot of a hearing relating to a proposed purchase of a liquor license by sending a notice to Attorney Allyn. He immediately brought to the City’s attention that his representation did not include liquor license purchase or transfers. The City responded by sending the notice to the owners of the Latin Spot and scheduling a new date for the hearing.
Attorney Brodeur-McGan’s disgraceful accusations in this case are exacerbated by her overt abandonment of her own ethical obligations. In her attempt to wrongfully prevent the deposition of Mayor Sullivan from occurring, she threatened Attorney Allyn that, if he did not settle the case on the terms she demanded, she would institute action against him with the Board of Bar Overseers for ethical violations. She does not seem to care that her actions are tantamount to extortion. The Court does care.
It is clear that the moving parties and their attorney have engaged in an intentional and desperate effort to thwart their discovery obligations by maliciously impugning Attorney Allyn’s professional reputation. Not only is their effort unsuccessful, they must bear the cost of what they have done.
It is ORDERED that the defendants’ Motion to Disqualify Plaintiffs Counsel is DENIED. It is FURTHER ORDERED that Michael J. Sullivan, Nichole Proulx and Attorney Lisa Brodeur-McGan shall pay all of the plaintiffs attorneys fees and costs associated with defending against this motion. They are severally and jointly liable for such payment. Plaintiff s counsel shall within 30 days file an affidavit detailing such fees and costs. Within 10 days therefrom, the movants and their counsel may file specific objections to any cost or fee they claim is unrelated to the motion or which they claim is excessive.
It is FURTHER ORDERED that, as a sanction, the defendants Michael J. Sullivan, Nichole Proulx, and the City of Holyoke shall not conduct any further discovery of any kind nor may they seek relief from the Court on any current, outstanding discovery issues.[2] They have, with the assistance of their counsel, knowingly disregarded their discovery obligations and have knowingly attempted to wrongfully interfere with the attorney-client relationship between the plaintiff and his counsel.
It is FURTHER ORDERED that the plaintiff and the defendant, Melanson, Heath & Co., must conduct any further discovery or seek any other orders relating to discovery no later than July 3, 2009. The defendant, Melanson, Heath & Co. shall not conduct any discovery on behalf of the other defendants nor shall it seek any orders relating to discovery for the benefit of the other defendants.

The defendant Melanson, Heath & Co. assents to the motion. It attempts to seeks safe ground by attempting to distinguish “assenting” to a motion from “joining” in a motion. The distinction is artificial. However, Melanson saves itself from the sanctions imposed upon the other defendants because neither Melanson nor its counsel offered or adopted the false accusations made in the affidavits submitted by the moving parties.

The parties have had more than four years to conduct discovery. There should be little left for the defendants to discover, since the April 30, 2009 discovery deadline was fast approaching when they elected to thwart the plaintiffs discovery by filing this motion.